NOT YET SCHEDULED FOR ORAL ARGUMENT
No. 25-5052

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

SCOTT BESSENT, Secretary of the Treasury, et al.,
*Defendants-Appellants*,

v.

HAMPTON DELLINGER,
*Plaintiff-Appellee*.

On Appeal from the United States District Court
for the District of Columbia
No. 1:25-cv-00385-ABJ

## BRIEF OF *AMICI CURIAE* FLORIDA AND
## 18 OTHER STATES IN SUPPORT OF
## APPELLANTS' EMERGENCY MOTION
## FOR STAY PENDING APPEAL

JAMES UTHMEIER
  *Attorney General of Florida*

JEFFREY PAUL DESOUSA
  *Acting Solicitor General*
NATHAN A. FORRESTER
DAVID M. COSTELLO
  *Chief Deputy Solicitors General*
DARRICK W. MONSON
  *Assistant Solicitor General*

Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399-1050
(850) 414-3300
*nathan.forrester@*
  *myfloridalegal.com*

*Counsel for* Amicus *State of Florida*
  [additional counsel listed below]

March 4, 2025

## CERTIFICATE AS TO PARTIES, FILINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), undersigned counsel certifies the following:

**Parties, Intervenors, and Amici**

All parties, intervenors, and amici appearing before the district court and in this Court are listed in Appellants' stay application, except for each of the amici submitting this brief.

**Rulings Under Review**

References to the rulings at issue appear in Appellants' stay application.

**Related Cases**

Hampton Dellinger v. Scott Bessent et al., No. 1:25-cv-00385-ABJ (D.D.C.).

Hampton Dellinger v. Scott Bessent et al., No. 25-5025 (D.C. Cir.).

Hampton Dellinger v. Scott Bessent et al., No. 25-5028 (D.C. Cir.).

Scott Bessent et al. v. Hampton Dellinger, No. 24A790 (S. Ct.).

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, FILINGS, AND RELATED CASES ......................................................................................i

TABLE OF AUTHORITIES ...................................................................iii

INTEREST OF *AMICI CURIAE* ...............................................................1

ARGUMENT ...........................................................................................1

I.  Historically, equity courts would not remedy allegedly unlawful removals. ...........................................................................2

II.  Congress has displaced any removal-related equitable remedies through the writ of quo warranto. ...................................8

III.  An equity court may not evade these limitations by ordering officials subordinate to the President to act as if an individual he removed still holds office. ..............................9

CONCLUSION .....................................................................................13

ADDITIONAL COUNSEL ....................................................................14

CERTIFICATE OF COMPLIANCE ......................................................15

CERTIFICATE OF SERVICE..............................................................16

# TABLE OF AUTHORITIES

## Cases

*Andrade v. Lauer*, 729 F.2d 1475 (D.C. Cir. 1984) ................... 7, 8, 11, 12

*Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320
  (2015)............................................................................................. 8

*Att'y Gen. v. Earl of Clarendon*, 17 Ves. Jr. 491, 34 Eng. Rep.
  190 (Ch. 1810) ............................................................................. 3

*Baker v. Carr*, 369 U.S. 186 (1962) ........................................... 6

*Beebe v. Robinson*, 52 Ala. 66 (1875)......................................... 5

*Berry v. Reagan*, No. 83-3182, 1983 WL 538 (D.D.C. Nov. 14,
  1983)............................................................................................. 7

*Bessent v. Dellinger*, 145 S. Ct. 515 (2025) ...................... 2, 8, 12

*Bond v. Floyd*, 385 U.S. 116 (1966)........................................... 7

*Case v. Beauregard*, 101 U.S. 688 (1880)................................. 8

*Cochran v. McCleary*, 22 Iowa 75 (1867) ................................. 4

*Delahanty v. Warner*, 75 Ill. 185 (1874) .................................. 5

*Dellinger v. Bessent*, No. 1:25-cv-385, 2025 WL 471022
  (D.D.C. Feb. 12, 2025)................................................................ 7

*Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012)........................... 8

*Fineran v. Bailey*, 2 F.2d 363 (5th Cir. 1924) .......................... 6

*Georgia v. Stanton*, 73 U.S. (6 Wall.) 50 (1867)....................... 2

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*,
  527 U.S. 308 (1999)................................................................. 2, 7

*Hagner v. Heyberger*, 7 Watts & Serg. 104 (Penn. 1844) ...................... 4

*In re Sawyer*, 124 U.S. 200 (1888)..................................... 2, 3, 4, 5, 6, 11

*Johnson v. Horton*, 63 F.2d 950 (9th Cir. 1933) ..................................... 7

*Littlefield v. Perry*, 88 U.S. 205 (1874)...................................................... 10

*PHH Corp. v. Consumer Fin. Prot. Bureau*, 881 F.3d 75 (D.C. Cir. 2018).................................................................................... 11

*Russello v. United States*, 464 U.S. 16 (1983)........................................... 9

*Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197 (2020)...................................................................................... 11

*Severino v. Biden*, 71 F.4th 1038 (D.C. Cir. 2023)........................... 10, 11

*Sheridan v. Colvin*, 78 Ill. 237 (1875) ....................................................... 4

*Stapf v. United States*, 367 F.2d 326 (D.C. Cir. 1966)........................... 11

*State ex rel. McCaffery v. Aloe*, 54 S.W. 494 (Mo. 1899) .......................... 5

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) ............... 7, 10

*Swan v. Clinton*, 100 F.3d 973 (D.C. Cir. 1996) ............................... 10, 11

*Tappan v. Gray*, 9 Paige Ch. 507 (Ch. Ct. N.Y. 1842) ............................. 4

*Taylor v. Kercheval*, 82 F. 497 (C.C.D. Ind. 1897) ................................... 5

*United States v. Old Dominion Boat Club*, 630 F.3d 1039 (D.C. Cir. 2011) .............................................................................. 12

*Vitarelli v. Seaton*, 359 U.S. 535 (1959).................................................... 7

*Walton v. House of Representatives of Okla.*, 265 U.S. 487 (1924)............................................................................... 2, 6, 10

*Webster v. Fall*, 266 U.S. 507 (1925) ...................................................... 11

iv

*Whitcomb v. Chavis*, 403 U.S. 124 (1971) ................................................. 2

*White v. Berry*, 171 U.S. 366 (1898) ........................................... 6

**Statutes**

42 U.S.C. § 2000e-5 ........................................................ 1

D.C. Code § 16-3501 *et seq.* (2024) ......................................... 8

D.C. Code § 16-3545 .................................................... 8, 9, 10

D.C. Code § 16-3546 ........................................................... 9

D.C. Code § 16-3547 ........................................................... 9

D.C. Code § 16-3548 ....................................................... 9, 10

**Rules**

D.C. Circuit Rule 29 ...................................................... 1

**Other Sources**

Eugene McQuillin, *A Treatise on the Law of Municipal Corporations* (1911) .................................................... 5

Howard Clifford Joyce, *A Treatise on the Law Relating to Injunctions* (1909) .................................................. 5

James L. High, *Treatise on the Law of Injunctions* (2d ed. 1880) ............................................................... 5, 6

John Norton Pomeroy, *A Treatise on Equity Jurisprudence* (4th ed. 1918) .................................................... 5

Joseph Story, *Commentaries on Equity Pleadings and the Incidents Thereof* (2d ed. 1840) .............................................. 3

Letter from John Adams to the Inhabitants of the Colony of Massachusetts-Bay, April 1775 ............................................ 3

v

Nikolas Bowie, *Why the Constitution Was Written Down*, 71
    Stan. L. Rev. 1397 (2018).......................................................3

Seth Davis, *Empire in Equity*, 97 Notre Dame L. Rev. 1985
    (2022)...........................................................................................3

W.S. Holdsworth, *English Corporation Law in the 16th and
    17th Centuries*, 31 Yale L.J. 382 (1922)..............................4

## INTEREST OF *AMICI CURIAE*

Pursuant to D.C. Circuit Rule 29, the Attorney General of Florida, on behalf of the State of Florida and 18 other States, respectfully submits this brief as *amici curiae* in support of the stay motion. *Amici* have an interest in ensuring that federal officials exercising significant executive authority are removable by the President, and thus politically accountable to the people. Anything less is inconsistent with the Framers' design and risks federal intrusion on state sovereignty.

## ARGUMENT

As the Government explains, the district court erred on the merits. *See* Emerg. Mot. for Stay, No. 25-5052 at 11–18. But the court also erred on the remedy. Federal courts may not use their equitable powers to remedy unlawful removals absent an act of Congress. *See, e.g.*, 42 U.S.C. § 2000e-5(g) (authorizing courts to "reinstate[]" employees who suffer discrimination). Yet the district court rendered that rule a nullity. It reinstated Dellinger "*de facto*" by "ordering" subordinate "executive branch officials[] to refrain from interfering with [Dellinger's] status and activities as the Special Counsel." DE32 at 55–58. That maneuver flouts both the Supreme Court's equity precedents and Congress's decision to

1

channel removal challenges through quo-warranto proceedings. A stay is warranted.

## I. Historically, equity courts would not remedy allegedly unlawful removals.

"The remedial powers of an equity court . . . are not unlimited." *Whitcomb v. Chavis*, 403 U.S. 124, 161 (1971). Federal courts may issue only equitable remedies that were "traditionally accorded by courts of equity." *Bessent v. Dellinger*, 145 S. Ct. 515, 517 (2025) (Gorsuch, J., joined by Alito, J., dissenting) (quoting *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 319 (1999)). And history teaches that "[a] court of equity has no jurisdiction over the appointment and removal of public officers." *Walton v. House of Representatives of Okla.*, 265 U.S. 487, 490 (1924); *Dellinger*, 145 S. Ct. at 517 (Gorsuch, J., dissenting) (finding it "well settled that a court of equity has no jurisdiction over the appointment and removal of public officers" (quoting *In re Sawyer*, 124 U.S. 200, 212 (1888)).

That rule flows from English common law. Recognizing the critical "distinction between judicial and political power," traditional English courts would not wield equity to vindicate a litigant's "political right[]" to office. *Georgia v. Stanton*, 73 U.S. (6 Wall.) 50, 71, 76 & n.20 (1867)

(collecting cases); *see Sawyer*, 124 U.S. at 212 (collecting cases, including *Attorney General v. Earl of Clarendon*, 17 Ves. Jr. 491, 498, 34 Eng. Rep. 190, 193 (Ch. 1810)). In *Earl of Clarendon*, for instance, the English Court of Chancery declined to remove public-school officers on the ground that they lacked necessary legal qualifications. 34 Eng. Rep. at 191. According to that court, a court of equity "has no jurisdiction with regard either to the election or the [removal] of" officers. *Id.* at 193. Contemporary English cases agreed. *See* Joseph Story, *Commentaries on Equity Pleadings and the Incidents Thereof* §§ 467–70 (2d ed. 1840) (explaining that traditional equity courts would not adjudicate rights of a "political nature" and citing examples); Seth Davis, *Empire in Equity*, 97 Notre Dame L. Rev. 1985, 2011–12 (2022).[1]

---

[1] Although *Earl of Clarendon* and some cases cited in *Sawyer* involved corporate officers, those legal entities were historically treated more like governments and public entities. Colonial governments, for instance, were created through corporate charters, with "shareholders" acting like modern-day voters and voting for corporate boards that looked like modern-day state and local governments. Nikolas Bowie, *Why the Constitution Was Written Down*, 71 Stan. L. Rev. 1397, 1416-21 (2018); *see also* Letter from John Adams to the Inhabitants of the Colony of Massachusetts-Bay, April 1775, https://founders.archives. gov/documents/Adams/06-02-02-0072-0015. And as noted in *Hagner v. Heyberger*, limits on equitable jurisdiction that applied to "private corporations" apply "*à fortiori*" to "public officer[s] of a municipal

American courts imported that principle after the Framing. In the early 19th century, courts nationwide denied that equity chancellors could afford a removed official relief, even when the official's ouster was illegal and unauthorized. *Tappan v. Gray*, 9 Paige Ch. 506, 508–09 (Ch. Ct. N.Y. 1842); *see also Hagner*, 7 Watts & Serg. at 105; *Sawyer*, 124 U.S. at 212 (collecting cases). *Hagner* is emblematic. There, the Supreme Court of Pennsylvania declined to enjoin a defendant from unlawfully acting as a school director because it possessed no more power than "an English court of chancery." *Hagner*, 7 Watts & Serg. at 106–07. Because chancery courts traditionally "would not sustain the injunction proceeding to try the election or [removal] of corporators of any description," Pennsylvania's high court held that it could not either. *Id.* Other courts took a similar tack throughout Reconstruction.[2]

------

character." 7 Watts & Serg. 104, 105 (Penn. 1844); *see also* W.S. Holdsworth, *English Corporation Law in the 16th and 17th Centuries*, 31 Yale L.J. 382, 383–84 (1922) (For both public and private corporations, "creation by and subordination to the state are the only terms upon which the existence of large associations of men can be safely allowed to lead an active life.").

[2] *See, e.g.*, *Cochran v. McCleary*, 22 Iowa 75, 91 (1867) ("The right to a public office or franchise cannot, as the authorities above cited show, be determined in equity."); *Sheridan v. Colvin*, 78 Ill. 237, 247 (1875) ("A court of equity is not a proper tribunal for determining disputed

The Supreme Court later confirmed that historical equitable constraint in *Sawyer*. A locally elected officer there obtained a federal injunction barring local officials from removing him. 124 U.S. at 204–06. After the local officials were held in contempt of that injunction, the Court issued a writ of habeas corpus to vacate their convictions because the injunction was issued without jurisdiction. The Court explained that a federal equity court "has no jurisdiction . . . over the appointment and removal of public officials." *Id.* at 210. And a wall of contemporary treatises echoed that understanding.[3] As one 19th-century commentator put it, "[n]o principle of the law of injunctions, and perhaps no doctrine of equity jurisprudence, is more definitely fixed or more clearly established than that courts of equity will not interfere by injunction to determine

_____

questions concerning the appointment of public officers, or their right to hold office[.]"); *Delahanty v. Warner*, 75 Ill. 185, 186 (1874) (court of chancery had no power to restrain local officials from removing the superintendent of streets from his post); *Beebe v. Robinson*, 52 Ala. 66, 73 (1875) (similar); *Taylor v. Kercheval*, 82 F. 497, 499 (C.C.D. Ind. 1897) (similar); *State ex rel. McCaffery v. Aloe*, 54 S.W. 494, 496 (Mo. 1899) (similar).

[3] *See* 2 James L. High, *Treatise on the Law of Injunctions* § 1312 (2d ed. 1880); 1 Howard Clifford Joyce, *A Treatise on the Law Relating to Injunctions* § 55 (1909); 4 John Norton Pomeroy, *A Treatise on Equity Jurisprudence* § 1760 (4th ed. 1918); 2 Eugene McQuillin, *A Treatise on the Law of Municipal Corporations* § 582 n.98 (1911).

5

questions concerning the appointment of public officers or their title to office." 2 High, *Law of Injunctions* § 1312.

The Supreme Court has doubled down on that rule. A decade after *Sawyer*, the Court reiterated that equity courts may "not, by injunction, restrain an executive officer from making a wrongful removal of a subordinate appointee, nor restrain the appointment of another." *White v. Berry*, 171 U.S. 366, 377 (1898). The Court restated the point in *Walton*: While federal courts are "*particularly* . . . without jurisdiction over the appointment and removal of state officers," they no more possess "jurisdiction over the appointment and removal of [other] public officers." 265 U.S. at 490 (emphasis added). And it repeated the principle in *Baker v. Carr*—"federal equity power [may] not be exercised to enjoin a state proceeding to remove a public officer." 369 U.S. 186, 231 (1962); *see also Fineran v. Bailey*, 2 F.2d 363, 363 (5th Cir. 1924) (similar).

By contrast, there is no established tradition of equity courts' remedying unlawful removals, at least not without express statutory authorization. *See Dellinger*, 145 S. Ct. at 517 (Gorsuch, J., dissenting) ("'No English case' involved 'a bill for an injunction to restrain the appointment or removal of a municipal officer.'" (quoting *Sawyer*, 124 U.S. at 212)).

6

And aside from the outlier case identified by the district court,[4] we know of no case in which a federal court has reinstated a removed officer.[5] The lack of historical pedigree for removal-related remedies proves that they were "unknown to traditional equity practice." *Grupo Mexicano*, 527 U.S. at 327.

The lack of a historical equitable remedy is confirmed by the presence of a historical *legal* remedy: the writ of quo warranto. As this Court has acknowledged, "the exclusive remedy" for "direct[ly] attack[ing]" one's removal has traditionally been "a *quo warranto* action." *Andrade v. Lauer*, 729 F.2d 1475, 1497 (D.C. Cir. 1984); *see also Johnson v. Horton*, 63 F.2d 950, 953 (9th Cir. 1933) (agreeing with appellees that "the question of the title to the office cannot be tried by a proceeding in equity, but that the exclusive remedy is by a writ of quo warranto" (quotation

---

[4] *See* DE14 at 19–20 (discussing *Berry v. Reagan*, No. 83-3182, 1983 WL 538 (D.D.C. Nov. 14, 1983)), *vacated as moot*, 732 F.2d 949 (D.C. Cir. 1983)).

[5] The only arguable candidates we have found are *Bond v. Floyd*, 385 U.S. 116 (1966), and *Vitarelli v. Seaton*, 359 U.S. 535 (1959). But neither the Court nor the parties in those cases grappled with the limits on federal remedial authority, so those decisions at most represent "drive-by" rulings with "no precedential effect." *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998).

omitted)). And because a "court of equity will not entertain a case for relief where the complainant has an adequate legal remedy," the longstanding "availability of quo warranto" undercuts any "novel equitable power to return an agency head to his office." *Dellinger*, 145 S. Ct. at 517 (Gorsuch, J., dissenting) (quoting *Case v. Beauregard*, 101 U.S. 688 (1880)).

## II. Congress has displaced any removal-related equitable remedies through the writ of quo warranto.

Even if equity courts historically could have remedied improper removals, Congress has "displace[d] [that] equitable relief," *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 329 (2015), through the quo-warranto framework in D.C. Code § 16-3501 *et seq.* (2024). That framework establishes a comprehensive judicial mechanism for determining whether an officer of the United States has "usurped, intruded into, or unlawfully held or exercised an office" belonging to a removed official. D.C. Code § 16-3545; *see Andrade*, 729 F.2d at 1497–98. "Given the painstaking detail with which the [Code] sets out the method" for challenging a removal, "Congress intended" the Code to be the "exclusive" process for testing one's title to office. *Elgin v. Dep't of Treasury*, 567 U.S. 1, 11–13 (2012).

8

That process, however, does not authorize novel equitable relief in cases involving a federal official. In such cases, courts may only "oust[]" the "usurpe[r]" from office, D.C. Code § 16-3545, and award "damages sustained by" the removed official, *id.* § 16-3548. Nor are equitable remedies implied by the provision governing federal officials, *id.* § 16-3545, for those remedies *are* expressly authorized in different Code provisions. *See* D.C. Code §§ 16-3546 (authorizing courts to "perpetually restrain[] and enjoin[]" "persons acting as a corporation without being legally incorporated" in the District), 16-3547 ("the court may render judgment . . . that the relator, if entitled to be declared elected, be admitted to the office"). The "inclu[sion of] particular language" authorizing equitable remedies in other sections of the Code suggests that Congress "intentionally and purposely" omitted those remedies in the section governing federal officers. *Russello v. United States*, 464 U.S. 16, 23 (1983).

## III. An equity court may not evade these limitations by ordering officials subordinate to the President to act as if an individual he removed still holds office.

The district court offered nothing to justify departing from its equitable bounds. Though the court conceded that it could not "order [the President] to reinstate the plaintiff," it reinstated Dellinger "*de facto*" by

enjoining "executive branch officials[] to refrain from interfering with [Dellinger's] status and activities as the Special Counsel." DE32 at 56–59 (citing *Swan v. Clinton*, 100 F.3d 973 (D.C. Cir. 1996); *Severino v. Biden*, 71 F.4th 1038 (D.C. Cir. 2023)).

That reasoning defies Supreme Court precedent and congressional intent. As explained, the Court has held that a federal "court of equity has no jurisdiction over the appointment and removal of public officers." *Walton*, 265 U.S. at 490. Congress has also displaced all removal-related remedies except damages and ouster. *See* D.C. Code §§ 16-3545, 3548. And even if the district court were right that only *reinstatement* is prohibited, its injunction requiring executive officials to pretend that Dellinger is still Special Counsel reinstates him in all but name. *See Littlefield v. Perry*, 88 U.S. 205, 223 (1874) ("[E]quity looks to substance rather than form.").

*Swan* and *Severino* do not undercut that conclusion. As the Government points out, both cases assessed, for purposes of standing, whether there was a "likelihood" that the court could issue an injunction sufficient to remedy the challenged removal. *See Steel Co.*, 523 U.S. at 103. That standing question did not require the courts to resolve whether those

10

injunctions could lawfully issue after a proceeding on the merits. Even more, neither the panels nor the parties in those cases mentioned the *Sawyer* line of decisions, and "it is black-letter law that cases are not precedent for issues that were not raised or decided." *PHH Corp. v. Consumer Fin. Prot. Bureau*, 881 F.3d 75, 195 (D.C. Cir. 2018) (Kavanaugh, J., dissenting), *abrogated by Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197 (2020). Whether *Sawyer* bars the injunctions theorized in those cases "merely lurk[ed] in the record," *Webster v. Fall*, 266 U.S. 507, 511 (1925), so neither case "constitute[s] precedent[]" on the issue, *Stapf v. United States*, 367 F.2d 326, 330 (D.C. Cir. 1966).

Any other reading of *Swan* and *Severino* would conflict with an earlier precedent of this Court: *Andrade v. Lauer*. In *Andrade*, the Court accepted that "the exclusive remedy" for a "'direct' attack" on removal "is a *quo warranto* action," not a suit in equity. 729 F.2d at 1497. Though the Court carved out a narrow equitable exception through which a court may "indirect[ly]" remedy a removal by "restrain[ing] invalidly appointed officers" from performing their duties, *id.* at 1496–98, it left intact the general principle that direct efforts to confirm entitlement to office must travel through quo warranto, *see id.* at 1497–99. That principle flatly

contradicts the injunctions proposed in *Swan* and *Severino*. And because *Andrade* predates both cases, it is the controlling precedent. *United States v. Old Dominion Boat Club*, 630 F.3d 1039, 1045 (D.C. Cir. 2011).

Last, the district court wrongly held that, in the alternative, Dellinger's "prayer for relief is sufficiently broad to encompass" a request for quo warranto. DE32 at 59 n.25. Dellinger has complied with none of the statutory requirements necessary to seek that writ, so it is unavailable. *See Andrade*, 729 F.2d at 1497–98 (outlining the many necessary procedural steps); *Dellinger*, 145 S. Ct. at 517 (Gorsuch, J., dissenting) (noting that Dellinger failed to "follow" the necessary "procedures"). And, as noted above, under the D.C. Code a court cannot invoke quo warranto as a basis for reinstating a removed federal officer.

# CONCLUSION

The stay should be granted.

Dated: March 4, 2025

Respectfully submitted,

JAMES UTHMEIER
  *Attorney General of Florida*

 */s/ Nathan A. Forrester*
JEFFREY PAUL DESOUSA
  *Acting Solicitor General*
NATHAN A. FORRESTER
  *Chief Deputy Solicitor General*
  *Counsel of Record*
DAVID M. COSTELLO
  *Chief Deputy Solicitor General*
DARRICK W. MONSON
  *Assistant Solicitor General*
State of Florida
Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399-1050
(850) 414-3300
*nathan.forrester@myfloridalegal.com*

*Counsel for* Amicus *State of Florida*

## ADDITIONAL COUNSEL

STEVE MARSHALL
Attorney General
State of Alabama

TIM GRIFFIN
Attorney General
State of Arkansas

CHRISTOPHER M. CARR
Attorney General
State of Georgia

RAÚL R. LABRADOR
Attorney General
State of Idaho

THEODORE E. ROKITA
Attorney General
State of Indiana

BRENNA BIRD
Attorney General
State of Iowa

KRIS KOBACH
Attorney General
State of Kansas

RUSSELL COLEMAN
Attorney General
State of Kentucky

LIZ MURRILL
Attorney General
State of Louisiana

LYNN FITCH
Attorney General
State of Mississippi

AUSTIN KNUDSEN
Attorney General
State of Montana

MICHAEL T. HILGERS
Attorney General
State of Nebraska

ALAN WILSON
Attorney General
State of South Carolina

MARTY JACKLEY
Attorney General
State of South Dakota

KEN PAXTON
Attorney General
State of Texas

DEREK BROWN
Attorney General
State of Utah

JOHN MCCUSKEY
Attorney General
West Virginia

JONATHAN SKRMETTI
Attorney General
State of Tennessee

14

## CERTIFICATE OF COMPLIANCE

This amicus brief complies with the type-volume limit of Federal Rule of Appellate Procedure 29(a)(5) because it contains 2,580 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it was prepared using Word for Microsoft 365 in 14-point Century Schoolbook, a proportionally spaced typeface.

*/s/ Nathan A. Forrester*
Nathan A. Forrester
Chief Deputy Solicitor General

## CERTIFICATE OF SERVICE

I certify that on March 4, 2025, I caused this document to be elec-

tronically filed with the Clerk of Court using this Court's CM/ECF sys-

tem, which will send a notice of docketing activity to all parties who are

registered through CM/EC

*/s/ Nathan A. Forrester*
Nathan A. Forrester
Chief Deputy Solicitor General

16