**ORAL ARGUMENT NOT YET SCHEDULED**

**No. 25-5052**

———————————————————————

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————————————————

**HAMPTON DELLINGER,**

*Plaintiff-Appellee,*

**v.**

**SCOTT BESSENT, in his official capacity as Secretary of the Treasury, et al.,**

*Defendants-Appellants.*

On Appeal from the United States District Court
for the District of Columbia

**BRIEF FOR *AMICUS CURIAE* SEPARATION OF POWERS CLINIC IN SUPPORT OF DEFENDANTS-APPELLANTS' EMERGENCY MOTION FOR A STAY PENDING APPEAL**

———————————————————————

DANIEL Z. EPSTEIN
AMERICA FIRST LEGAL
  FOUNDATION
611 Pennsylvania Ave. SE #231
Washington, DC 20003
202-964-3721
daniel.epstein@aflegal.org

R. TRENT MCCOTTER
  *Counsel of Record*
BOYDEN GRAY PLLC
800 Connecticut Ave. NW
Suite 900
Washington, DC 20006
(202) 706-5488
tmccotter@boydengray.com

*Counsel for Amicus Curiae*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 29, *Amicus* hereby submits this certificate.

## A. Parties and Amici

The parties and amici who have appeared before the Court are listed in Defendants-Appellants' D.C. Circuit Rule 28(a)(1) certificate.

## B. Rulings Under Review

This appeal arises from a memorandum opinion (Dkt. 32) and order (Dkt. 33) that the district court issued on March 1, 2025, granting summary judgment in plaintiff's favor and entering a permanent injunction and declaratory judgment. The opinion and order are attached to Defendants-Appellants' motion.

## C. Related Cases

The related cases are listed in Defendants-Appellants' D.C. Circuit Rule 28(a)(1) certificate.

## DISCLOSURE STATEMENT

Per Federal Rules of Appellate Procedure 26.1 and 29(a), and D.C. Circuit Rule 26.1, *Amicus* states that it is not a corporation or similar entity, and no further Rule 26.1 disclosure statement is required.

## TABLE OF CONTENTS

DISCLOSURE STATEMENT.....................................................................ii

TABLE OF AUTHORITIES....................................................................iv

IDENTITY AND INTEREST OF *AMICUS CURIAE* ...........................1

SUMMARY OF ARGUMENT.................................................................2

ARGUMENT .........................................................................................3

  I.  The Default Rule Applies Here: The President Can Remove the
Special Counsel At Will ...................................................................3

  II.  The District Court Erred by Relying—Expressly at First, Then
Later Indirectly—on *Humphrey's Executor* ...................................10

CONCLUSION.....................................................................................15

# TABLE OF AUTHORITIES

**Case**                                                               **Page(s)**

*Collins v. Yellen*,
    594 U.S. 220 (2021) ...............................................................5, 6

*Dellinger v. Bessent*,
    No. 1:24-cv-385, 2025 WL 471022 (D.D.C. Feb. 12, 2025) ..... 10, 11, 12

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
    537 F.3d 667 (D.C. Cir. 2008)...............................................12

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
    561 U.S. 477 (2010) ...............................................4, 5, 13

*Humphrey's Executor v. United States*,
    295 U.S. 602 (1935) ......................................2, 3, 7, 10–13

*Myers v. United States*,
    272 U.S. 52 (1926) ...............................................4, 5, 14

*PHH Corp. v. CFPB*,
    881 F.3d 75 (D.C. Cir. 2018)...........................................5, 13

*Seila Law LLC v. CFPB*,
    591 U.S. 197 (2020) ..........................................4, 6–11, 13

*Trump v. United States*,
    603 U.S. 593 (2024) ...............................................2, 5, 14

**Constitution**

U.S. Const. art. II, § 1, cl. 1 ....................................................4

**Other Authorities**

2 Op. O.L.C. 120 (1978)...........................................................7

*About OSC*,
    OSC, https://perma.cc/ANW6-LCEQ (visited Feb. 24,
    2025) ...............................................................................7

Joe Dwinell, *Massachusetts U.S. Attorney Rachael Rollins
    Resigning—'In Disgrace,' says Sen. Cotton*, Bos. Herald
    (May 16, 2023) ................................................................9

Off. Special Counsel, *Rep. of Prohibited Pol. Activity Under the Hatch Act OSC File No. HA-22-000173 (Rachael Rollins)* (May 17, 2023), https://perma.cc/5R3V-8D8A ........................9

## IDENTITY AND INTEREST OF *AMICUS CURIAE*[1]

*Amicus curiae* is the Separation of Powers Clinic housed within the Separation of Powers Institute at The Catholic University of America's Columbus School of Law. The Institute and Clinic were established during the 2024–25 academic year for the purpose of studying, researching, and raising awareness of the proper application of the U.S. Constitution's separation of powers constraints on the exercise of federal government power. The Clinic provides students an opportunity to discuss, research, and write about separation of powers issues in ongoing litigation.

The Clinic previously was housed at Scalia Law School for several years and has submitted numerous briefs over the years in cases implicating separation of powers, including cases involving removal protections for executive officials.

---

[1] No person other than *amicus curiae* and its counsel assisted with or made a monetary contribution for preparing or submitting this brief. All parties have consented to the filing of this brief.

## SUMMARY OF ARGUMENT

The Supreme Court held last year that "the President's power to remove 'executive officers of the United States whom he has appointed' may not be regulated by Congress." *Trump v. United States*, 603 U.S. 593, 621 (2024). The district court here disagreed, bemoaning Defendants-Appellants' asserted "constitutional license to bully officials in the executive branch into doing [the President's] will." Slip Op. at 6. But a more appropriate description would be that Defendants-Appellants seek to vindicate Article II's mandate that the President be fully accountable for ensuring the laws be faithfully executed.

The Supreme Court has long recognized this constitutional imperative and thus has held that the President has the authority to remove Executive Branch principal officers at will, subject to a narrow exception recognized in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935). The Court has not carved out the Special Counsel from that general rule, nor recognized any other exception for principal officers. The district court should have applied the default presumption that Article II authorized the President to fire Hampton Dellinger at will and at any moment, for any reason or no reason at all. *See* Part I, *infra*.

2

The district court also mistakenly reasoned—first expressly, then later indirectly—that *Humphrey's Executor* is relevant to the Office of Special Counsel (OSC). *See* Part II, *infra*. The Special Counsel is not part of a multi-member, expert, balanced commission that largely reports to Congress. The district court's reliance on *Humphrey's Executor* was not just misplaced but infected the court's analysis, which led it to find a new, previously unrecognized exception to the removal power over principal officers.

Defendants-Appellants accordingly have a strong likelihood of success on the merits. The Court should grant their emergency stay motion.

## ARGUMENT

### I.   The Default Rule Applies Here: The President Can Remove the Special Counsel At Will.

There is no dispute that the Special Counsel is a principal officer, nominated by the President and confirmed by the Senate. Hampton Dellinger is therefore in the heartland of executive officials over whom the President must have absolute removal authority to ensure that accountability for the faithful execution of the laws remains with the President under a clear chain of command.

3

"Our Constitution was adopted to enable the people to govern themselves" and "requires that a President chosen by the entire Nation oversee the execution of the laws." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 499 (2010). Article II does so by vesting the executive power in the President, who must "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 1, cl. 1; *id.* § 3. Thus, "the 'executive Power'—all of it—is 'vested in a President.'" *Seila Law LLC v. CFPB*, 591 U.S. 197, 203 (2020).

These provisions "grant[] to the President" the "general administrative control of those executing the laws, including the power of appointment *and removal* of executive officers." *Myers v. United States*, 272 U.S. 52, 163–64 (1926) (emphasis added). "[I]f any power whatsoever is in its nature Executive, it is the power of appointing, overseeing, and controlling those who execute the laws." *Free Enter.*, 561 U.S. at 492. Because the President cannot conduct all executive business alone, he must rely on "executive officers" to assist with that duty. *Id.* at 483. And "[s]ince 1789, the Constitution has been understood to empower the President to keep these officers accountable—by removing them from office, if necessary." *Id.*

4

"Without such power, the President could not be held fully accountable for discharging his own responsibilities; the buck would stop somewhere else." *Id.* at 514. Anyone wielding executive power without full accountability to the President would "pose a significant threat to individual liberty and to the constitutional system of separation of powers and checks and balances." *PHH Corp. v. CFPB*, 881 F.3d 75, 165 (D.C. Cir. 2018) (Kavanaugh, J., dissenting).

Thus, "[i]f there is any point in which the separation of the legislative and executive powers ought to be maintained with great caution, it is that which relates to officers and offices." *Myers*, 272 U.S. at 116. As the Supreme Court summarized just last year, "the President's power to remove 'executive officers of the United States whom he has appointed' may not be regulated by Congress." *Trump*, 603 U.S. at 621.

If anything, that principle applies even more strongly at the beginning of a new Administration. "New Presidents *always* inherit thousands of Executive Branch officials whom they did not select. It is the power to supervise—and, if need be, remove—subordinate officials that allows a new President to shape his administration and respond to the electoral will that propelled him to office." *Collins v. Yellen*, 594 U.S.

220, 277–78 (2021) (Gorsuch, J., concurring in part). Otherwise, there would be "wholly unaccountable government agent[s]" who "assert[] the power to make decisions affecting individual lives, liberty, and property," yet are not accountable to "those who govern." *Id.* at 278.

These rules apply to the Special Counsel, who was not carved out from *Seila Law*'s holding on removability of the leaders of single-headed departments. The Court's first response to those who invoked the OSC was to note that the OSC statute was "created nearly 200 years after the Constitution was ratified, drew a contemporaneous constitutional objection from the Office of Legal Counsel under President Carter and a subsequent veto on constitutional grounds by President Reagan." *Seila Law*, 591 U.S. at 221. In other words: the Special Counsel's removal protections are ahistorical and have always been recognized as inconsistent with Article II.

To be sure, the Court also noted that OSC does not wield the same powers that the CFPB did in *Seila Law*—but that is hardly an express ruling carving out the Special Counsel as unique from a constitutional perspective. *Id.* In fact, the Court did the opposite by holding that the *Humphrey's Executor* exception (discussed in Part II below) and the

6

*Morrison* exception (discussed below in the next paragraph) represent the "outermost constitutional limits of permissible congressional restrictions on the President's removal power." *Seila Law*, 591 U.S. at 218. Neither of those apply to OSC, though. The district court, however, claimed to have unearthed a third exception. That was error.

To give a sense of the illogic in holding a principal officer to be protected from at-will removal, consider that under *Morrison*, even *inferior* officers are removable at-will unless they possess "narrowly defined duties" that exclude "policymaking or administrative authority." *Id.* at 204, 218. Dellinger would fail even that test, meaning the district court blessed removal protections that would not be constitutional even as applied to an inferior officer.

OSC's own website says it is a "prosecutorial agency." *About OSC*, OSC, https://perma.cc/ANW6-LCEQ (visited Feb. 24, 2025). And rightfully so, because OSC enforces the Civil Service Reform Act, the Whistleblower Protection Act, the Hatch Act of 1939, and the Uniformed Services Employment and Reemployment Rights Act of 1994. DOJ's Office of Legal Counsel has taken the view for nearly 50 years that the

7

Special Counsel "perform[s] largely executive functions." 2 Op. O.L.C. 120, 121 (1978).

Even during the pendency of this case, Dellinger has been prosecuting complaints on behalf of terminated federal employees. No wonder the district court was forced to acknowledge that the Special Counsel does "perform some typically executive functions," Slip Op. at 5, pursuant to a statute that "contains some executive-sounding verbs," *id.* at 39. The court should have followed *Seila Law*'s default rule and concluded this rendered Dellinger removable at will.

Even on its own terms, the district court was internally inconsistent about the nature of OSC and how that affected the court's analysis. At one point the court argued that it was not distinguishing *Seila Law* on the basis that OSC "is smaller or less important" than the CFPB, Slip Op. at 49, yet the court had previously hung its hat on the view that OSC is a "small federal agency," and thus its leader is apparently more deserving of removal protections under Article II, *id.* at 3.

Finally, lest the Court think that OSC deals only with prosecuting matters affecting lower-level employees (which would still be executive power, by the way), it is worth noting that Dellinger's predecessor issued

8

a 100-page report finding Hatch Act violations by the Biden-appointed U.S. Attorney Rachael Rollins,[2] who immediately "resign[ed] in disgrace." Joe Dwinell, *Massachusetts U.S. Attorney Rachael Rollins Resigning—'In Disgrace,' says Sen. Cotton*, Bos. Herald (May 16, 2023), https://tinyurl.com/4dz75e99.

Taking down a sitting U.S. Attorney is no small feat—and hardly one consistent with the notion that the Special Counsel exercises such a microscopic amount of executive power that he would somehow be a *sui generis* exception to the default rule of at-will removal of principal officers outside the realm of *Humphrey's Executor*.

\* \* \*

A fair reading of *Seila Law* did not leave open the prospect that the Special Counsel represents a heretofore unrecognized exception to the removal power. The Court should nonetheless eliminate all doubt and hold that the President can fire the Special Counsel without cause, at any time.

---

[2] Off. Special Counsel, *Rep. of Prohibited Pol. Activity Under the Hatch Act OSC File No. HA-22-000173 (Rachael Rollins)* (May 17, 2023), https://perma.cc/5R3V-8D8A.

## II.    The District Court Erred by Relying—Expressly at First, Then Later Indirectly—on *Humphrey's Executor*.

As noted above, in *Humphrey's Executor* the Supreme Court established a narrow exception to the President's removal power over principal officers for those who serve on "a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power," a descriptor the Supreme Court applied to the Federal Trade Commission as it was understood to operate in 1935 when *Humphrey's Executor* was issued. *Seila Law*, 591 U.S. at 216.

In its order granting a TRO, the district court expressly analogized the Special Counsel to the position at issue in *Humphrey's Executor*. The district court said that "several" of "the circumstances that animated [the Supreme Court's] opinion in *Humphrey's Executor* … pertain to the OSC today." *Dellinger v. Bessent*, No. 1:24-cv-385, 2025 WL 471022, at *5 (D.D.C. Feb. 12, 2025). For example, like OSC, "the [FTC in 1935] performed specified duties to aid the legislature, such as making investigations and reports to Congress, and like the OSC, the five member board of the FTC was 'designed to be non-partisan and to act with entire impartiality.' The *Seila Law* Court also pointed out that

10

*Humphrey's Executor* found that '[t]he FTC's duties were 'neither political nor executive,' but instead called for 'the trained judgment of a body of experts' 'informed by experience.' Here we have a statute that incorporates Congress's judgment with respect to the qualifications to be the Special Counsel." *Id.* at *5–6.

This analogy to *Humphrey's Executor* falls flat. Dellinger did not serve on a "multimember body," let alone one "balanced along partisan lines," nor did he perform "legislative and judicial functions" in their constitutional sense. In the words of the Supreme Court, "a single Director … cannot be described as a 'body of experts' and cannot be considered 'non-partisan' in the same sense as a group of officials drawn from both sides of the aisle." *Seila Law*, 591 U.S. at 218. Accordingly, *Humphrey's Executor* has no application here.

In its summary judgment order, the district court backed off its express reliance on *Humphrey's Executor*, *see* Slip Op. at 35 n.16, but the court's mistaken thinking still seems to have infected its analysis. For example, the court found it significant that (in its view) the Special Counsel must be "free of partisan or political influence," *id.* at 6, and this "independence from partisan political interference is necessary," *id.* at

11

50. That is a direct allusion to *Humphrey's Executor*'s discussion of non-partisan officials. The district court also found significant that the Special Counsel can "report directly to Congress," *id.* at 5; *see id.* at 50 (same), invoking *Humphrey's Executor*'s discussion of legislative functions. And the court tried to measure whether the acknowledged executive power the Special Counsel possesses is sufficiently significant, *id.* at 6, 42–50, again invoking *Humphrey's Executor*'s rationale. The district court applied *Humphrey's Executor* in all but name.

Besides simply being inapplicable to the Special Counsel in the first place, there are several additional reasons why *Humphrey's Executor* should not apply here. The Court is of course bound by that opinion as far as it goes, but "[w]e should resolve questions about the scope of [Supreme Court] precedents in light of and in the direction of the constitutional text and constitutional history." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 537 F.3d 667, 698 (D.C. Cir. 2008) (Kavanaugh, J., dissenting). And *Humphrey's Executor* is "inconsistent with the text of the Constitution, with the understanding of the text that largely prevailed from 1789 through 1935, and with prior precedents," *id.* at 696, and its foundations and rationale have been "repudiated [in] almost every

aspect," *Seila Law*, 591 U.S. at 239 (Thomas, J., concurring in part and dissenting in part). Accordingly, "the foundation for *Humphrey's Executor* is not just shaky. It is nonexistent." *Id.* at 248. This Court should not apply that opinion beyond its narrow facts.

This is no academic dispute. By allowing the executive power to be wielded by someone not fully accountable to the elected Commander in Chief, "*Humphrey's Executor* poses a direct threat to our constitutional structure and, as a result, the liberty of the American people." *Id.* at 239. It means the President "could not be held fully accountable for discharging his own responsibilities; the buck would stop somewhere else." *Free Enter.*, 561 U.S. at 514. So-called independent agencies— which the district court apparently believes now includes OSC—thus "pose a significant threat to individual liberty and to the constitutional system of separation of powers and checks and balances." *PHH Corp.*, 881 F.3d at 165 (Kavanaugh, J., dissenting).

Accordingly, although the Court is bound by *Humphrey's Executor*, it should decline to apply it here for numerous reasons. The default rule applies to Dellinger: Article II "grants to the President" the "general administrative control of those executing the laws, including the power

of appointment *and removal* of executive officers." *Myers*, 272 U.S. at 163–64 (emphasis added). Under that rule, "[a]s we have explained, the President's power to remove 'executive officers of the United States whom he has appointed' may not be regulated by Congress." *Trump*, 603 U.S. at 621. Accordingly, Defendant-Appellants are likely to prevail on the merits, and the Court should grant a stay of the district court's order.

## CONCLUSION

The Court should grant Defendants-Appellants' emergency motion.

March 4, 2025                    Respectfully submitted,

                                /s/ R. Trent McCotter
                                R. TRENT MCCOTTER
                                BOYDEN GRAY PLLC
                                800 Connecticut Ave. NW, Suite 900
                                Washington, DC 20006
                                (202) 706-5488
                                tmccotter@boydengray.com

                                DANIEL Z. EPSTEIN
                                AMERICA FIRST LEGAL
                                  FOUNDATION
                                611 Pennsylvania Ave. SE #231
                                Washington, DC 20003
                                202-964-3721
                                daniel.epstein@aflegal.org

                                *Counsel for Amicus Curiae Separation
                                of Powers Clinic*

15

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 29 because it contains 2,594 words, excluding the exempted portions. This brief complies with the typeface and type style requirements of Federal Rules of Appellate Procedure 32(a)(5)–(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook and 14-point font.

*/s/ R. Trent McCotter*
R. Trent McCotter

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of this Court by using the CM/ECF system, which will serve all parties automatically.

*/s/ R. Trent McCotter*
R. Trent McCotter