**NOT YET SCHEDULED FOR ORAL ARGUMENT**

# United States Court of Appeals
# for the District of Columbia Circuit

### No. 25-5052

HAMPTON DELLINGER, in his personal capacity and in his official capacity as Special Counsel of the Office of Special Counsel,

*Plaintiff-Appellee,*

*v.*

SCOTT BESSENT, in his official capacity as Secretary of the Treasury; *et al.,*

*Defendants-Appellants.*

---

*On Appeal from the United States District Court
for the District of Columbia in No. 1:25-cv-00385-ABJ,
Honorable Amy Berman Jackson, U.S. Senior District Judge.*

**BRIEF OF *AMICI CURIAE* THE GOVERNMENT ACCOUNTABILITY PROJECT, NATIONAL SECURITY COUNSELORS, NATIONAL WHISTLEBLOWER CENTER, PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY, PROJECT ON GOVERNMENT OVERSIGHT, AND WHISTLEBLOWERS OF AMERICA IN SUPPORT OF PLAINTIFF-APPELLEE**

STEPHEN M. KOHN
KAYLA SVIHOVEC
KOHN, KOHN & COLAPINTO, LLP
1710 N Street NW
Washington, DC 20036
(202) 342-6980
sk@kkc.com
kayla.svihovec@kkc.com

THOMAS M. DEVINE
GOVERNMENT ACCOUNTABILITY PROJECT
1612 K Street NW, Suite 808
Washington, DC 20006
(202) 457-0034
tdevine@whistleblower.org

*Counsel for Amici Curiae*

March 5, 2025



## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Except for *Amici Curiae*, all parties, intervenors, and amici appearing before the District Court and in this Court are listed in the Brief for Appellee.

References to the ruling at issue appear in the Brief for Appellee.

*Amici* are unaware of any related cases pending before this Court or any other court.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and 29, and D.C. Circuit Rule 26.1, six *Amici,* Government Accountability Project, National Security Counsellors, National Whistleblower Center, Public Employees for Environmental Responsibility, Project on Government Oversight, and Whistleblowers of America submit their corporate disclosure statement.

Each *amicus is a* nonpartisan, nonprofit corporations organized under section 501(c)(3) of the Internal Revenue Code.  They have a special interest in promoting corporate and government accountability by protecting whistleblowers and advancing free speech in the civilian and governmental workforce.  No publicly held corporation has any form of ownership interest in these entities, which have no parent corporations and do not issue stock.

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..............i

CORPORATE DISCLOSURE STATEMENT ........................................................ ii

TABLE OF AUTHORITIES ...................................................................................iv

GLOSSARY OF ABREVIATIONS.................................................................... vii

STATEMENTS OF INTEREST.............................................................................1

SUMMARY OF ARGUMENT ..............................................................................5

ARGUMENT ..........................................................................................................6

      I.     A CORNERSTONE OF THE MERIT SYSTEM, THE
           OFFICE OF SPECIAL COUNSEL WAS SPECIFICALLY
           CREATED TO SERVE THE PUBLIC INTEREST ............................7

      II.    THE OFFICE OF SPECIAL COUNSEL ACTS AS A
           CONFIDENTIAL, INDEPENDENT CHANNEL TO
           INITIATE REVIEWS OF GOVERNMENT MISCONDUCT ..........10

      III.   WHISTLEBLOWERS WORKING THROUGH THE
           INDEPENDENT OFFICE OF SPECIAL COUNSEL HAVE
           MADE SIGNIFICANT CONTRIBUTIONS TO THE
           PUBLIC INTEREST ........................................................................14

CONCLUSION .....................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Day v. Homeland Security*,
  DC-1221-12-0528-W-1 (MSPB 2013) ............................................................. 2-3

*Department of Homeland Security v. Maclean*,
  574 U.S. 383 (2015) ...............................................................................15

*Dr. Kiki Ikossi v. Department of the Navy*,
  516 F.3d 1037 (D.C. Cir. 2008) ...............................................................2

*Dr. Tommie Savage v. Army*,
  2015 MSPB 51 (2016) .............................................................................2

*English v. G.E.*,
  496 U.S. 72 (1990) ...................................................................................2

*Lawson v. FMR LLC*,
  571 U.S. 429 (2014) .................................................................................2

*Linda Tripp v. Department of Defense,*
  219 F. Supp. 2d 85 (D.D.C. 2002) ...........................................................2

*Murray v. UBS Sec., LLC,*
  *601 U.S. 23 (2024)*.................................................................................2

*Parkinson v. Department of Justice*,
  815 F.3d 757 (Fed. Cir. 2016).................................................................3

*Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*,
  529 U.S. 765 (2000) .................................................................................2

*William Sanjour v. EPA*,
  56 F.3d 85 (D.C. Cir. 1995) .....................................................................2

**Statutes & Other Authorities:**

5 U.S.C. § 1121(b) ........................................................................................7

5 U.S.C. § 1206..............................................................................................7

5 U.S.C. § 1212(a) ......................................................................................11

iv

5 U.S.C. § 1213 ...................................................................10, 11

5 U.S.C. § 1221(e) ...................................................................8

A Report to Congress from the U.S. Office Of Special Counsel
  for Fiscal Year 2001 ...........................................................16

Circuit Rule 8 ............................................................................6

Draft OSC Strategic Plan (2022-2026) (Dec. 10, 2021).........................11

Federal Rule of Appellate Procedure 29(a)(4)(E)....................................1

Government Accountability Project Press Release, *U.S. Special Counsel
  Findings Vindicate Government Accountability Project Client Kevin
  Chmielewski, Whose Whistleblowing Exposed Scott Pruitt's Corruption*
  (May 22, 2022) ................................................................ 14-15

Government Accountability Project Press Release, *Whistleblowers'
  Complaints of Gross Mismanagement at Fort Bliss Immigrant Children's
  Site Ignored* (July 7, 2021) ...................................................15

Government Accountability Project Press Releases,
  *Resolution of White House Whistleblower Complaint* (May 30, 2024)...............14

*Hearings on the Whistleblower Protection Provisions of the Civil Service
  Reform Act of 1978 before the House Post Office and Civil Service
  Subcommittee on Civil Service,* 96th Cong., 2d Sess.193 (1980) .........................8

*Markup Session on S. 2640 before the Senate Comm. on Govt. Affairs*,
  *95th Cong. 2d. Sess.* 91-2 (1978)............................................................8

NPR, *Federal Inquiry Details Abuses of Power by Trump's CEO
  Over Voice of America* (May 21, 2023)....................................................15

OSC Handout, *Your Rights as a Federal Employee* ................................................11

Pub. L. 95–454, Findings and Statement of Purpose § 3(2) ...................................7

Pub. L. No. 95–454, 92 Stat. 1112 (Oct. 13, 1978),
  5 U.S.C. § 1206 *et seq*. ........................................................................7

Pub. L. No. 101–12, 103 Stat. 16 ,5 U.S.C. § 1221(e), (Apr. 10, 1989)...................8

S. Rep. No. 95–969, at 8 (July 10, 1978).................................................................10

*Statement on Actions Taken Against Waste, Fraud,
  and Abuse in the Federal Government* (April 16, 1981)......................................12

*The Whistleblowers: A Report on Federal Employees who Disclose Acts of Governmental Waste, Abuse and Corruption Prepared for the Senate Committee on Governmental Affairs,* 95th Cong., 2d Sess. (Feb. 1978) ..............8

Tom Devine, *The Whistleblower's Survival Guide: Courage Without Martyrdom* ...............................................................................16

USA Today, *Study: Lack of MRAPs Cost Marine Lives* (Feb. 15, 2008) ...............15

*Whistleblowers' Complaints Reveal Further Abuse of Authority, Violations of Law and Ethics Rules at the White House Office of Science and Technology Policy* (March 11, 2022).............................................................14

Wikipedia, William H. Zimmer Power Station ......................................................16

# GLOSSARY OF ABREVIATIONS

**CSRA**          Civil Service Reform Act

**GAP**           Government Accountability Project

**MSPB**          US Merit Systems Protection Board

**NSC**           National Security Counselors

**NWC**           National Whistleblower Center

**OSC**           US Office of Special Counsel

**PEER**          Public Employees for Environmental Responsibility

**POGO**          Project on Government Oversight

**WOA**           Whistleblowers of America

**WPA**           Whistleblower Protection Act

## STATEMENTS OF INTEREST[1]

**Government Accountability Project** ("GAP") is an independent, nonpartisan, nonprofit, public interest organization that promotes corporate and government accountability by protecting whistleblowers and advancing free speech in the civilian and governmental workforce. GAP advocates for effective implementation of whistleblower protections throughout industry, international institutions, and the federal government, focusing on issues including government and corporate accountability, environment, nuclear,  protection, transportation safety, national security, immigration, public health, and food safety.

Founded in 1977, GAP is the nation's oldest whistleblower protection and advocacy organization. In addition to focusing on supporting and providing legal counsel to whistleblowers, GAP leads campaigns to promote accountability in government and corporate America, and to enact whistleblower protection laws both domestically and internationally.

**National Security Counselors** ("NSC") is a non-profit public interest law firm which specializes, in pertinent part, in national security employment law,

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), GAP affirms that no counsel for a party authored this brief in whole or in part, no party or counsel for a party contributed money that was intended to fund preparing or submitting this brief, and no person other than GAP or its counsel contributed money that was intended to fund the preparation or submission of this brief.

including whistleblower protection.  NSC regularly represents whistleblowers in all stages of the administrative process, including before the Office of Special Counsel and in federal court.  NSC maintains that the independence of the Special Counsel is critical to the effective functioning of the whistleblower protection regime for the federal government.

**National Whistleblower Center** ("NWC") is a nonprofit, non-partisan, tax-exempt, charitable organization dedicated to the protection of whistleblowers. Founded in 1988, the NWC is keenly aware of the issues facing government employees who report waste, fraud, or abuse.  Over the years, the NWC has worked aggressively to ensure that laws protecting federal employees achieve Congress' goals.  On a non-partisan basis the NWC, its officers and directors have represented or assisted numerous federal employees basis, including *William Sanjour v. EPA*, 56 F.3d 85 (D.C. Cir. 1995) (en banc); *Dr. Kiki Ikossi v. Department of the Navy,* 516 F.3d 1037 (D.C. Cir. 2008); *Dr. Tommie Savage v. Army,* 2015 MSPB 51 (2016); and *Linda Tripp v. Department of Defense,* 219 F. Supp. 2d 85 (D.D.C. 2002).  Additionally, the NWC has participated as *amicus curiae* in numerous cases directly affecting whistleblowers, including *Murray v. UBS Sec., LLC*, 601 U.S. 23 (2024); *Lawson v. FMR LLC,* 571 U.S. 429 (2014); *English v. G.E.,* 496 U.S. 72 (1990); *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765 (2000); *Day v.*

*Homeland Security, DC-1221-12-0528-W-1* (MSPB 2013); and *Parkinson v.*

*Department of Justice*, 815 F.3d 757 (Fed. Cir. 2016).

**Public Employees for Environmental Responsibility** ("PEER") is a

national nonprofit, non-partisan organization, incorporated in the District of

Columbia.  PEER provides direct services to environmental and public health

professionals, land managers, scientists, enforcement officers, and other civil

servants dedicated to upholding environmental laws and values. PEER provides

pro bono legal services to current and former public employees who hold

government accountable to environmental ethics, compliance with environmental

laws, and scientific integrity standards. PEER represents and defends federal

whistleblowers, investigates and exposes improper or illegal government actions,

and works to improve laws and regulations impacting PEER's clients. On behalf of

its clients, PEER has filed numerous complaints and disclosures with the OSC.  It

relies on OSC as an important tool for exposing and remedying government

violations of law, waste, fraud and abuse and for protecting whistleblowers.

**Project On Government Oversight** ("POGO") is a nonpartisan

independent watchdog that investigates and exposes waste, corruption, abuse of

power.  POGO champions reforms to achieve a more effective, ethical, and

accountable federal government that safeguards constitutional principles. Working

with whistleblowers for such purposes is an integral part of POGO's mission, and

ensuring strong whistleblower protections is one of POGO's core policy priorities. Founded in 1981, POGO helped to lead efforts to pass and strengthen the Whistleblower Protection Enhancement Act of 2012, including testifying about the legislation before Congress, advocating for the strongest possible whistleblower provisions, urging the public to take action, and organizing critical support.

**Whistleblowers Of America** ("WOA") is a voluntary peer support network. WOA concentrates on whistleblower mental health through a trauma-informed approach and assists employees suffering the psychosocial impacts of whistleblower retaliation. Founded in 2017, WoA provides support, advocacy, resources and referrals to a global network of employees and advocates, and has provided support to over 1,050 individuals in over 30 countries.

## SUMMARY OF ARGUMENT

The Court should deny Defendant-Appellant's stay motion because it is not in the public interest.  Were the stay to be granted, Special Counsel Hampton Dellinger will likely be immediately and summarily removed from office.  Such removal is contrary to the will of Congress, as expressed in several statutes, and will irreparably harm the independence of the Office of Special Counsel ("OSC").  Congress specifically empowered the OSC to protect federal employees from retaliation who report illegality, gross mismanagement, gross waste, abuse of authority, and serious dangers to public health and safety—reports that protect the public interest.

*Amici Curiae* submit this brief to show how, by design, the OSC is an independent agency, how that independence has provided a safe space for whistleblower to report, and how those reports have exposed, for decades, wrongdoing, waste, fraud and abuse throughout the federal government.

# ARGUMENT

Per Circuit Rule 8, a stay motion:

> [M]ust state the reasons for granting the stay or other emergency relief sought and discuss, with specificity, each of the following factors: (i) the likelihood that the moving party will prevail on the merits; (ii) the prospect of irreparable injury to the moving party if relief is withheld; (iii) the possibility of harm to other parties if relief is granted; and (iv) the public interest.

In this brief, *Amici* focus exclusively on the fourth factor – why granting a stay is *not* in the public interest.

Severe public policy consequences are at stake. An independent Special Counsel is a unique and invaluable resource promoting transparency in government and against fraud, waste, or abuses of power, regardless of which political party betrays the public. The immediate, summary removal of Special Counsel Dellinger in the circumstances here will irreparably destroy the independence of his office.

Eliminating the Special Counsel's independence would cancel the public service mandate repeatedly affirmed unanimously by Congress and by past Presidents. Whistleblowers working with an independent OSC have changed the course of history. They have turned to the OSC precisely because of its reputation for independence. Undermining that independence will deter whistleblowers from reporting wrongdoing and will create an accountability vacuum.

6

I.    A CORNERSTONE OF THE MERIT SYSTEM, THE OFFICE OF
       SPECIAL COUNSEL WAS SPECIFICALLY CREATED TO SERVE
       THE PUBLIC INTEREST

In the aftermath of the Watergate scandals, President Carter proposed and

Congress passed the Civil Service Reform Act of 1978 ("CSRA"),[2] creating the

OSC led by a Special Counsel whom the President can only fire for cause.  5

U.S.C. § 1121(b) provides that "[t]he Special Counsel may be removed by the

President only for inefficiency, neglect of duty, or malfeasance in office." The

CSRA's Findings and Statement of Purpose are clear:  "prohibited personnel

practices should be statutorily defined to enable Federal employees states  to avoid

conduct which undermines the merit system principles and the integrity of the

merit system."[3]  The goal was to create a final, nonpartisan backstop for federal

employees' disclosures of fraud, waste and abuse, which might otherwise be

quashed or ignored due to partisan loyalties of existing federal office-holders, and,

further, to preclude reprisal by the latter against the complaining employees.

From the beginning, OSC has been a unique, hybrid agency whose task is to

screen allegations of misconduct for further review, investigate merit system

---

[2] Pub. L. No. 95-454, 92 Stat. 1112 (Oct. 13, 1978), 5 U.S.C. § 1206 *et seq*.,
[3]  Pub. L. 95–454, Findings and Statement of Purpose § 3(2), available at
https://www.dol.gov/sites/dolgov/files/OASAM/legacy/files/Civil-Service-Reform-
Act-1978.pdf.

violations, and recommend relief for those whose rights are violated.[4]  Congress
has consistently considered impartial independence from politics to be
indispensable. After the Carter administration attempted to use the US Merit
Systems Protection Board ("MSPB") to punish politically disfavored
whistleblowers, Congress chose to make the OSC an independent agency through
enactment of the Whistleblower Protection Act of 1989 ("WPA").[5]

The Special Counsel's most prominent mission is serving as a safe resource
for whistleblowers. This reflects Congress's long-standing, deep-rooted, and,
critically, its ceaselessly bipartisan commitment to whistleblowers as essential
mechanisms for oversight and accountability. The congressional mandate to make
whistleblower protection a CSRA cornerstone began in 1978 with a massive study
and report by the Senate Governmental Affairs Committee, commonly known as
the Leahy Report.[6] The Report explained:

> Whistleblowers have exposed problems with defense cost overruns,
> unsafe nuclear power plant conditions, unproven or questionable

---

[4]  *Hearings on the Whistleblower Protection Provisions of the Civil Service Reform
Act of 1978 before the House Post Office and Civil Service Subcommittee on Civil
Service,* 96th Cong., 2d Sess.193 (1980); *Markup Session on S. 2640 before the
Senate Comm. on Govt. Affairs, 95th Cong. 2d. Sess.* 91-2 (1978).
[5] Pub. L. No. 101–12, 103 Stat. 16 , 5 U. S. C. § 1221(e), (Apr. 10, 1989).
[6] *The Whistleblowers: A Report on Federal Employees who Disclose Acts of
Governmental Waste, Abuse and Corruption Prepared for the Senate Committee on
Governmental Affairs,* 95th Cong., 2d Sess. (Feb. 1978).

drugs approved for marketing by the FDA, contract illegalities and improprieties, conflicts of interest, Merit System abuse and regulatory corruption.[7]

The Leahy Report acknowledged, however, that would-be whistleblowers had to choose between the official Code of Ethics for Government Service and the unwritten "Code of Silence" – a powerful impediment to whistleblower disclosures.  It wrote:  "[a]agency loyalty, pressure from supervisors, and the desire to remain employed are better served with silence."[8]

> The Leahy Report summarized the disastrous impact from the latter outcome: The code of silence thwarts top management's ability to effectively manage and actually removes the burden of accountability from their shoulders. Fear of reprisal renders intra-agency communications a sham and compromises not only  the employee, management and the code of Ethics, but also the Constitutional function of congressional oversight itself.[9]

When Congress passed the CSRA later in 1978, the Senate committee report emphasized that whistleblowers needed to be protected from retaliation.

> Often, the whistleblower's reward for dedication to the highest moral principles is harassment and abuse. Whistleblowers frequently encounter severe damage to their careers and substantial economic loss.
>
> Protecting employees who disclose government illegality, waste, and corruption is a major step toward a more effective civil service. In the vast federal bureaucracy it is not difficult to conceal wrongdoing

---

[7] *Id.,*  at 1.

[8] *Id.,*  at 2.

[9] *Id.,*  at 49.

provided that no one summons the courage to disclose the truth. . . . What is needed is a means to assure them that they will not suffer if they help uncover and correct administrative abuses.[10]

As shown below, whistleblowers have relied on those protections for over four decades to expose massive wrongdoing. This case will determine whether they can continue to rely on these safeguards.

II.    THE OFFICE OF SPECIAL COUNSEL ACTS AS A CONFIDENTIAL, INDEPENDENT CHANNEL TO INITIATE REVIEWS OF GOVERNMENT MISCONDUCT

The OSC was created to authorize and encourage federal employees to confidentially disclose to OSC allegations protected under the WPA, namely, violations of law, gross waste or mismanagement, abuse of authority, and significant threats to the public health and safety. 5 U.S.C. § 1213. OSC is empowered to investigate and may make recommendations to the President, the Attorney General, and the relevant Office of Inspector General. *Id.* Significantly, the OSC's only power is to recommend action to other agencies. It does not make or enforce executive decisions. But that does not diminish its importance: Congress created the independent agency as a safe space for employees to make

---

[10] S. Rep. No. 95-969, at 8 (July 10, 1978), available at https://www.flra.gov/system/files/webfm/Authority/Archival%20Decisions%20&%20Leg%20Hist/LEG%20HIST%20OF%20THE%20CSRA%20OF%201978%20Mar%2027%201979%20VOL%202.pdf.

disclosures of wrongdoing.  To combat the "Code of Silence" and to overcome

fears of retaliation, Congress mandated that the OSC, by design, function as a

neutral party, one without political bias.  For these reasons, whistleblowers can

file OSC Complaints confidentially,[11] and the OSC staff responsible for

whistleblower complaints are attorneys,  independently bound by rules of

professional ethics.[12]

Congress carefully balanced the need to encourage reporting with the

ultimate authority of the executive to manage the federal government. Thus, the

OSC's authority is limited to making only *recommendations* based on the

confidential disclosures he or she receives, not imposing or enforcing decisions.

The executive retains the exclusive authority and discretion to take any

enforcement actions (or to take no enforcement action) based on the OSC's

recommendations. 5 U.S.C. §§ 1212(a) and 1213.

---

[11] OSC Handout, *Your Rights as a Federal Employee*, available at
https://osc.gov/Documents/Outreach%20and%20Training/Handouts/Your%20Righ
ts%20as%20a%20Federal%20Employee%20(v2024).pdf
[12] Draft OSC Strategic Plan (2022-2026), at 3 (Dec. 10, 2021)("a single attorney
generally handles each prohibited personnel practice (PPP) case from the start of
the investigation through closure of the case"), available at
https://osc.gov/Documents/Resources/Statutory%20Reports%20and%20Notices/Fe
deral%20Register%20Publications/OSC%20Draft%20Strategic%20Plan.pdf.

President Ronald Reagan recognized the critical importance of protecting the ability of whistleblowers to submit confidential disclosures to an office that is required by law to accept those complaints, and whose manager has the independence to guarantee that confidentiality will be maintained.[13]  He emphasized that "guaranteed confidentiality," along with protection against reprisals, were essential to facilitating the effectiveness of the Nation's civil service laws.[14]  President Reagan explained just how important these civil service law provisions were to protect the government from fraud:

> A study released yesterday reveals startling statistics that confirm much of what this administration has said about the "national scandal" of waste, fraud, and abuse in government.
>
> Forty-five percent of Federal employees who responded to the survey said that in the last 12 months they had observed or had evidence of waste or illegality . . . .
>
> The study, conducted by the Merit Systems Protection Board and the Inspectors General, also found that much of the wasteful or illegal activities have gone unreported because "nothing could be done." …

---

[13] *Statement on Actions Taken Against Waste, Fraud, and Abuse in the Federal Government* (April 16, 1981), available at https://www.reaganlibrary.gov/archives/speech/statement-actions-taken-against-waste-fraud-and-abuse-federal-government.
[14] *Id.*

> Federal employees or private citizens who wish to report incidents of illegal or wasteful activities are not only encouraged to do so but will be guaranteed confidentiality and protected against reprisals. . . .
>
> The vital element in any program designed to fight fraud and waste is the willingness of employees to come forward when they see this sort of activity. They must be assured that when they "blow the whistle" they will be protected and their information properly investigated.[15]

President Reagan rightly focused on the OSC's two main functions -- offering "assurance" that those who blow the whistle "will be protected and their information properly investigated."[16]  Granting the stay to allow for the summary firing of Special Counsel Dellinger would allow the Executive to undermine assurance regarding those two vital protections, and will chill the willingness of any federal employee to report wrongdoing.

*Amici's* years of working with numerous federal employees in a non-partisan manner confirms that whistleblowers' willingness to come forward with information the public needs is easily discouraged without protection against retaliation.  A*mici* conservatively have represented hundreds of federal employees who have taken advantage of their right to file confidential complaints and who

---

[15] *Id.*
[16] *Id.*

would not have done so if they doubted the OSC's independence. Eliminating the independence of the Special Counsel will have a massive chilling effect. The public interest will be harmed.

III.     WHISTLEBLOWERS WORKING THROUGH THE INDEPENDENT OFFICE OF SPECIAL COUNSEL HAVE MADE SIGNIFICANT CONTRIBUTIONS TO THE PUBLIC INTEREST

The public interest has been substantially aided when whistleblowers – working through the independent OSC – have assisted in detecting and preventing waste, fraud and abuses of authority. For example, working with OSC whistleblowers have:

- Exposed abuses of authority in 2021 by the then-head of the White House Office of Science and Technology Policy;[17]

- Exposed misuse of taxpayer funds and excessive spending by a former EPA Administrator;[18]

---

[17] Government Accountability Project Press Releases, *Resolution of White House Whistleblower Complaint* (May 30, 2024), available at https://whistleblower.org/press-release/resolution-of-white-house-whistleblower-complaint/; *Whistleblowers' Complaints Reveal Further Abuse of Authority, Violations of Law and Ethics Rules at the White House Office of Science and Technology Policy* (March 11, 2022), available at https://whistleblower.org/press-release/press-release-whistleblowers-complaints-reveal-further-abuse-of-authority-violations-of-law-and-ethics-rules-at-the-white-house-office-of-science-and-technology-policy/.

[18] Government Accountability Project Press Release, *U.S. Special Counsel Findings Vindicate Government Accountability Project Client Kevin Chmielewski,*

- Exposed abuses of authority, gross mismanagement and gross waste of funds at the U.S. Agency for Global Media;[19]

- Exposed gross mismanagement by the Department of Health and Human Services at a site holding thousands of undocumented children;[20]

- Exposed failure by US Marine Corps officials to deliver mine-resistant vehicles and other equipment that caused Iraqi civilian and one-third of American combat deaths and injuries;[21]

- Exposed Transportation Security Administration orders to cancel Federal Air Marshal coverage for the highest-risk, cross-country airplane flights;[22]

- Sparked public backlashes that repeatedly forced the government to abandon plans to replace its meat inspections with a corporate

_____

*Whose Whistleblowing Exposed Scott Pruitt's Corruption* (May 22, 2022), available at https://whistleblower.org/press/press-release-u-s-special-counsel-findings-vindicate-government-accountability-project-client-kevin-chmielewski-whose-whistleblowing-exposed-scott-pruitts-corruption/.
[19] NPR, *Federal Inquiry Details Abuses of Power by Trump's CEO Over Voice of America* (May 21, 2023), available at https://www.npr.org/2023/05/21/1177208862/usagm-michael-pack-voa-voice-of-america-investigation-trump-abuse-of-power.
[20] Government Accountability Project Press Release, *Whistleblowers' Complaints of Gross Mismanagement at Fort Bliss Immigrant Children's Site Ignored* (July 7, 2021), available at https://whistleblower.org/press-release/press-release-whistleblowers-complaints-of-gross-mismanagement-at-fort-bliss-immigrant-childrens-site-ignored/.
[21] USA Today, *Study: Lack of MRAPs Cost Marine Lives* (Feb. 15, 2008).
[22] *Department of Homeland Security v. Maclean,* 574 U.S. 383 (2015).

self-inspection honor system;[23]

- Triggered the removal of upper management at the Department of Justice after revealing systematic corruption in the agency's program to train police forces of other nations to investigate and prosecute government corruption;[24] and

- Forced the cancellation of an already approved and nearly complete nuclear power plant because its construction was compromised by falsification of X-rays on safety welds, uninspected safety systems, and shoddy materials.[25]

* * *

The record is clear. Whistleblowers are the government's most effective single weapon against fraud, waste and abuse. As a result, protecting whistleblowers means protecting the public. Defendant-Appellant's assertion of "at will" authority means the Office of Special Counsel's mission will be to serve political rather than public interests.

———————————

[23] Tom Devine, *The Whistleblower's Survival Guide: Courage Without Martyrdom,* at 6 (1997).

[24] The clean-up of corruption was so significant that the Special Counsel gave the whistleblower, Martin Andersen, the Public Servant Award. See A Report to Congress from the U.S. Office Of Special Counsel for Fiscal Year 2001, at 3, available at https://osc.gov/Documents/Resources/Congressional%20Matters/Annual%20Reports%20to%20Congress/FY%202001%20Annual%20Report%20to%20Congress.pdf.

[25] Wikipedia, William H. Zimmer Power Station, available at https://en.wikipedia.org/wiki/William_H._Zimmer_Power_Station.

16

## CONCLUSION

*Amici* respectfully request that this Court deny Defendant-Appellant's stay

motion and uphold the District Court's injunction.


Dated:  March 5, 2025                                    Respectfully submitted,

                                                        /s/ Kayla Svihovec
                                                        Stephen M. Kohn
                                                        Kayla Svihovec
                                                        Kohn, Kohn & Colapinto, LLP
                                                        1710 N Street NW,
                                                        Washington, DC 20036
                                                        (202) 342-6980
                                                        (202) 342-6984
                                                        sk@kkc.cor
                                                        kayla.svihovec@kkc.com

                                                        Tom Devine
                                                        D.C. Bar No. 357202
                                                        Government Accountability Project
                                                        1612 K Street, NW,
                                                        Suite 808
                                                        Washington, DC 20006
                                                        202-457-0034, ext. 124
                                                        tomd@whistleblower.org


                                                        *Counsel for Government*
                                                        *Accountability Project,*
                                                        *Whistleblowers of America, Public*
                                                        *Employees for Environmental*
                                                        *Responsibility, The National*
                                                        *Whistleblower Center, Project on*
                                                        *Government Oversight and National*
                                                        *Security Counselors*

17

## CERTIFICATE OF COMPLIANCE

This *amicus curiae* brief complies with the word limit of Fed. R. App. P. 29(a)(5) because it contains 3,096 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Circuit Rule 32(e)(1).

This filing complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6). Its typeface is Times New Roman, 14-point font.

Dated: March 5, 2025                    Respectfully submitted,

                                        /s/ Kayla Svihovec
                                        Kayla Svihovec

## CERTIFICATE OF SERVICE

I certify that on March 5, 2025, I electronically filed this brief with the Clerk of Court for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system, thereby serving all persons required to be served.

Dated:  March 5, 2025                           Respectfully submitted,

                                                /s/ *Kayla Svihovec*
                                                Kayla Svihovec