**No. 25-5052**　　　　　　　　　　　　　　**September Term, 2024**

**1:25-cv-00385-ABJ**

**Filed On:** March 10, 2025

Hampton Dellinger, in his personal capacity
and in his official capacity as Special Counsel
of the Office of Special Counsel,

　　　　Appellee

　　v.

Scott Bessent, in his official capacity as
Secretary of the Treasury, et al.,

　　　　Appellants

**BEFORE:**　Henderson, Millett, and Walker, Circuit Judges

## ORDER AND OPINION

Upon consideration of the March 5, 2025 order granting the emergency motion for a stay pending appeal, which indicated that an opinion would follow in due course, the opinion thereto is attached.

**Per Curiam**

　　　　　　　　　　　　　　**FOR THE COURT:**
　　　　　　　　　　　　　　Clifton B. Cislak, Clerk

　　　　　　　　BY:　/s/
　　　　　　　　　　Daniel J. Reidy
　　　　　　　　　　Deputy Clerk

PER CURIAM: This case is about the presidential removal power. After being fired by President Donald Trump, the Special Counsel, Hampton Dellinger, sued to challenge that action. The court below granted summary judgment to Dellinger and issued a permanent injunction and declaratory judgment in his favor. The government now appeals that decision, requesting a stay pending appeal. Because the government has shown a strong likelihood of success on the merits and its asserted injury outweighs Dellinger's, we grant its motion.

I.

The Congress created the Office of the Special Counsel (OSC) in the Civil Service Reform Act of 1978. Pub. L. No. 95-454, § 202, 92 Stat. 1111, 1121 (1978). OSC is led by a single individual—the Special Counsel—who is appointed by the President with Senate advice and consent for a five-year term. 5 U.S.C. § 1211. By statute, the Special Counsel may be removed "only for inefficiency, neglect of duty, or malfeasance in office." *Id.*

OSC's mission is to "protect employees, former employees, and applicants for employment from prohibited personnel practices." 5 U.S.C. § 1212(a)(1); *see also Dellinger v. Bessent*, --- F.Supp.3d ---, 2025 WL 665041, at *4–10 (D.D.C. Mar. 1, 2025) (*Dellinger I*) (detailing OSC's legislative history). To achieve that mission, OSC has "investigative and enforcement powers." *Dellinger v. Bessent*, 2025 WL 559669, at *11 (D.C. Cir. Feb. 15, 2025) (*Dellinger II*) (Katsas, J., dissenting). These powers include the authority to "receive and investigate allegations of prohibited personnel practices"; to "investigate alleged violations" of certain other laws; to require other agencies to conduct investigations, provide records and submit reports; and to seek stays of personnel actions and file complaints before the Merit Systems Protection Board (MSPB). *See id.* (quoting 5 U.S.C. §§ 1212–1216); *Dellinger I*, 2025 WL 665041, at *10–12 (describing OSC's authorities).

When it was established, OSC was part of the MSPB, which is a "'quasi-judicial body[] empowered to determine when abuses or violations of law have occurred' and to 'order corrective action.'" *Dellinger I*, 2025 WL 665041, at *6 (quoting S. Rep. No. 95-969, at 2 (1978)). Just over ten years later, OSC was carved out of the MSPB to become an independent agency. *See id.* at *8 (citing Whistleblower Protection Act of 1989, Pub. L. 101-12, 103 Stat. 16 (1989)). From the beginning, the Special Counsel had for-cause removal protections. Civil Service Reform Act, 92 Stat at 1122. The Office of Legal Counsel (OLC) contemporaneously objected to those protections, opining that the Congress could not limit the President's power to remove the Special Counsel because his functions were "executive in character" and his "role in investigating and prosecuting prohibited practices" was analogous to "that of a U.S. attorney." *Id.* at *7 (quoting Mem. Op. for the Gen. Couns., Civ. Serv. Comm'n, 2 Op. O.L.C. 120, 120 (1978)); *see also Dellinger II*, 2025 WL 559669, at *11 (collecting authorities referring to the Special Counsel as a prosecutor). Presidents Ronald Reagan and Trump also expressed constitutional concerns about the for-cause removal protections. *Dellinger I*, 2025 WL 665041, at *8, 10.

President Joe Biden nominated Dellinger to be Special Counsel on October 3, 2023 and he was sworn into office on March 6, 2024 after being confirmed by the Senate. On February 7, 2025, President Trump fired Dellinger, effective immediately. Dellinger then sued President Trump and other executive-branch officials in district court, seeking a declaratory judgment that the firing was unlawful and an injunction against the other officials to prevent them from removing him from office. The court granted Dellinger injunctive and declaratory relief on March 1, 2025 and this appeal followed.

**II.**

In deciding whether to grant a stay, we consider: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009). "The first two factors . . . are the most critical." *See id.* at 434.

**A.**

On the first factor, the government has satisfied its burden. "[T]he Constitution prohibits even 'modest restrictions' on the President's power to remove the head of an agency with a single top officer." *Collins v. Yellen*, 594 U.S. 220, 256 (2021) (quoting *Seila Law LLC v. CFPB*, 591 U.S. 197, 228 (2020)); *see also Trump v. United States*, 603 U.S. 593, 621 (2024) ("[T]he President's power to remove 'executive officers of the United States whom he has appointed' may not be regulated by Congress or reviewed by the courts.") (quoting *Myers v. United States*, 272 U.S. 52, 106, 176 (1926)). Granted, *Seila Law* noted the more "limited jurisdiction" of OSC as compared to the agency at issue there, *Seila Law*, 591 U.S. at 221, and *Collins* did "not comment on the constitutionality of any removal restriction that applies to [the Special Counsel]," 594 U.S. at 256 n.21. However, the government has shown that the logic of those cases is substantially likely to extend to the Special Counsel.

That is so because the Court in *Collins* clarified that "[c]ourts are not well-suited to weigh the relative importance of the regulatory and enforcement authority of disparate agencies" and so it did "not think that the constitutionality of removal restrictions hinges on such an inquiry." *Id.* at 253. This case illustrates the point. *Compare Dellinger II*, 2025 WL 559669, at *11 (Katsas, J., dissenting) ("The Special Counsel has broad investigative and enforcement powers.") *and* Mot. 14

(describing OSC's powers as "significant") *with Dellinger I*, 2025 WL 665041, at *20 ("OSC [is] not . . . vested with significant executive power.") *and* Opp'n 9 (describing OSC's powers as "extremely limited"). Nevertheless, such parsing of authorities is precisely the inquiry that the district court engaged in below and that Dellinger asks us to undertake now. *Dellinger I*, 2025 WL 665041, at *16–28; Opp'n 6–13. Accordingly, the government is likely to succeed in showing that arguments about the scope and functions of the Special Counsel as a sole agency head do not affect the President's removal power.

Both the district court and Dellinger highlight that *Seila Law* was particularly concerned about the "significant executive power" that the director there wielded. *Dellinger I*, 2025 WL 665041, at *19, 20 (quoting *Seila Law*, 591 U.S. at 220); Opp'n 8 (same). The district court reformulated the removal test as whether an agency can "fairly be likened to a typical administrative agency charged with implementing [congressional] directives in accordance with Presidential policy and priorities." *Dellinger I*, 2025 WL 665041, at *26. And Dellinger also seeks to distinguish *Seila Law* and *Collins* as instances of "principal officers leading single-headed agencies that exercise binding regulatory and enforcement authority affecting private actors." Opp'n 7.

But *Collins* emphasized that "the nature and breadth of an agency's authority is not dispositive in determining whether Congress may limit the President's power to remove its head." 594 U.S. at 251–52. It is for that very reason that three Justices only concurred in part in the holding, observing that "[a]ny 'agency led by a single Director,' no matter how much executive power it wields, now becomes subject to the requirement of at-will removal." *Id.* at 273 (Kagan, J., concurring in part and concurring in the judgment). Whatever the merits of that expansion from *Seila Law*, it is binding on our court and applies no matter the "nature" *or* "breadth" of its executive authority.

In any event, the government has sufficiently demonstrated that Dellinger exercises at least enough authority to contradict the President's directives. As Dellinger acknowledges, OSC recently requested "a stay of personnel actions with the MSPB concerning a recent termination of probationary employees at the U.S. Department of Agriculture." Opp'n 13 n.1. In fact, that request involves thousands of employees, Appellant Rule 28(j) Letter 1, and follows Dellinger's earlier successful request for a stay involving six other employees, Mot. 9, 18. Moreover, the Special Counsel's earlier request claimed that the MSPB "must" grant a stay unless the request is "inherently unreasonable." Mot. 18. To be able to obtain the reinstatement of thousands of employees in a single agency, even if only temporarily, with such a vague standard of review seems to suggest the Special Counsel's powers are not as limited as he claims.

In a footnote in his opposition to the stay, Dellinger also argues that he is an inferior rather than principal officer, Appellee Br. 13 n.2, but not even the court below was convinced by that argument, *Dellinger I*, 2025 WL 665041, at *19 n.18. In evaluating whether an officer is principal or inferior, the Supreme Court has most recently "focused on whether the officer's work is 'directed and supervised' by a principal officer." *Seila Law*, 591 U.S. at 217 n.3. As the district court observed, only "the President has the authority to remove the Special Counsel" and "he is a Presidential appointee who must be confirmed by the Senate." *Dellinger I*, 2025 WL 665041, at *19 n.18. Thus, the government has shown that Dellinger is all but certain to be designated a principal officer.

In sum, the government has demonstrated a strong likelihood of success on the merits of its appeal and thus the first factor weighs in its favor.

**B.**

As to weighing the relative harm, Dellinger argues that the government's asserted harms "to the Executive Branch, to the separation of powers, and to our democratic system" are "foreclosed," although he is unable to cite any binding precedent for that proposition. Opp'n 20. Dellinger also disputes whether any injury to the government from his seeking stays of the removal of probationary employees is irreparable. *Id.* Even if that were so, there is no doubt that it is impossible to unwind the days during which a President is "direct[ed] . . . to recognize and work with an agency head whom he has already removed." *Dellinger II*, 2025 WL 559669, at *16 (Katsas, J., dissenting)). That requirement "impinges on the 'conclusive and preclusive' power through which the President controls the Executive Branch that he is responsible for supervising." *Id.* (quoting *Trump*, 603 U.S. at 608–09). And the relative importance of the Special Counsel and duration of the district court's order, if it were to remain in place during the pendency of this appeal, "go[] to the extent—not the character—of the President's injury." *Id.*

Conversely, Dellinger must "make a showing of irreparable injury sufficient in kind and degree to override the[] factors cutting against the general availability of [] injunctions in Government personnel cases." *Sampson v. Murray*, 415 U.S. 61, 84 (1974). The government argues that Dellinger's injury is not irreparable because the traditional remedy for a removal claim is backpay. Mot. 26 (citing *Dellinger II*, 2025 WL 559669, at *17 (Katsas, J., dissenting)); *see also Sampson*, 415 U.S. at 90 ("[T]emporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury. . . . This premise is fortified by the Back Pay Act."). Although Dellinger "never even brought up the subject of his salary" below, *Dellinger I*, 2025 WL 665041, at *32, his complaint asks for an injunction to be paid "all wages and benefits owed to him," Compl. 14 ¶ f. So, he would likely be entitled to backpay if he were to prevail on appeal.

Instead, Dellinger asserts he is injured by being "deprived of the statutory right to function in office." Opp'n 20. Assuming he is correct that his removal is statutorily ultra vires, and assuming that his removal constitutes a cognizable injury, that does not mean such injury is irreparable and weighs in his favor. Ultimately, a stay is "'an exercise of judicial discretion' and 'the propriety of its issue is dependent upon the circumstances of the particular case.'" *Nken*, 556 U.S. at 433 (citing *Virginia Railroad Co. v. United States*, 272 U.S. 658, 672 (1926)). Here, the circumstances cut in favor of a stay. At worst, Dellinger would remain out of office for a short period of time. By contrast, the potential injury to the government of both having its designated Acting Special Counsel sidelined and unable to act while also having to try and unravel Dellinger's actions is substantial. Thus, the injury-focused factors also favor a stay.

## C.

Ordinarily, the public interest factor merges with the harm to the government when the government is a party. *Nken*, 556 U.S. at 435. Here, Dellinger asserts that it would "severely undermine the public interest" to issue a stay because of the "critical importance" of having a Special Counsel who enjoys removal protections and the "public importance of a robust and properly functioning OSC." Opp'n 21. Never mind the tension between Dellinger's assertions that OSC is critically important to the public interest but simultaneously lacks significant executive power. The more obvious problem is that it is not clear how we could balance the Special Counsel's asserted public interest against the public interest asserted by the rest of the executive branch. And after all, "[o]nly the President (along with the Vice President) is elected by the entire Nation." *Dellinger II*, 2025 WL 559669, at *17 (Katsas, J., dissenting) (quoting *Seila Law*, 591 U.S. at 224). At the least, this factor does not weigh in Dellinger's favor.

\* \* \*

Accordingly, the first three *Nken* factors weigh in favor of a stay and the last factor, at minimum, does not weigh against it. The government has therefore met its burden for the grant of a stay.

For the foregoing reasons, we grant Appellants' motion for a stay pending appeal.

*So ordered.*